**Shirley J. HAMPTON, Appellant–Plaintiff,**

v.

**Keith A. MOISTNER, Appellee–Defendant.**

No. 33A01–9504–CV–114.

Court of Appeals of Indiana.

Sept. 7, 1995.

Thomas L. Hulse, Hulse, Lacey, Hardacre, Austin & Shine, Anderson, for appellant.

James A. Goodin, Barry C. Paige, Goodin & Kraege, Indianapolis, for appellee.

## OPINION

ROBERTSON, Judge.

Shirley J. Hampton appeals the trial court's granting of judgment on the evidence at the conclusion of Hampton's case in chief in the jury trial held on Hampton's claim against Keith A. Moistner for personal injuries suffered when Hampton's car was struck by a train. The sole issue on appeal is whether the trial court erred in granting the motion for judgment on the evidence. We reverse.

### FACTS

The facts in the light most favorable to the nonmovant Hampton reveal that on December 16, 1988, many young people were "cruising" on Broad Street in New Castle, Indiana. Broad Street is a two lane street—one eastbound lane and one westbound lane. Typically, the young people drive for a distance down Broad Street, turn around, and drive back in the other direction. At the time of the accident which gave rise to this lawsuit,

the traffic was "bumper to bumper" and was moving at a "snail's pace."

Defendant Keith Moistner was driving westbound in his pick-up truck followed by Jeff Fox, who was driving a Pontiac Firebird. As Fox drove over the first of two sets of railroad tracks, he bumped into the back of Moistner's truck. Fox backed up his car a bit away from the truck. Moistner, very agitated, got out of his truck and met Fox at the rear-end of the truck to inspect the damage. There was very little damage to either automobile. The fiberglass nose cone on the Firebird was broken.

The accident stopped the westbound traffic. Plaintiff Hampton had been in her car following Fox's Firebird. The accident caused Hampton to stop on the first set of railroad tracks. After Fox had backed his Firebird up, the front of Hampton's car was very close to the rear-end of the Firebird making it impossible to maneuver around.

Then, a train whistle blew indicating that a train was coming from the North. The crossing gates came down and the flashing lights were activated. The crossing gate for the westbound lane (on the East side of the tracks) closed right behind Hampton's car. The crossing gate for the eastbound lane (on the West side of the tracks) closed and traffic began backing up behind it. Moistner and Fox were still outside their automobiles. At that point, there was no reasonable way that Hampton's car could have been moved off the tracks. When the whistle blew, the train had not yet come into sight. When the train came around a bend in the track and became visible, it was still about a block and a half from Hampton's car.

About that time, a police officer approached the scene from the East in his police car. The police officer observed a pick-up truck parked between the two sets of railroad tracks and that the Westbound lane of traffic had cleared for a block and a half in front of the pick-up truck. The police officer heard several young people yelling and screaming. The voices were coming from the area where the pick-up truck was. The police officer got out of his car and began walking toward the pick-up truck to investigate what was happening. Several young people approached the police officer. These young people were very excited and began yelling to the police officer that "he wouldn't move so she could get off the track. There was a car stuck on the track." They pointed to the car on the railroad track and within seconds a train struck the car. The police officer ran toward the accident and observed that the pick-up and the Firebird were still stopped at the tracks and that the rear-end of the Firebird was very close to the tracks.

The collision with the train caused Hampton's car to be carried approximately 150 feet down the track to the South where it collided with a cement loading dock. Hampton was severely injured. She had been comatose from brain injury. Hampton has no memory of the collision or the events immediately preceding the accident.

## DECISION

■ When reviewing a trial court's granting of a motion for judgment on the evidence at the close of a plaintiff's case, we examine the evidence and the reasonable inferences most favorable to the plaintiff from a quantitative as well as a qualitative perspective. *Montgomery Ward & Company v. Gregg* (1990), Ind.App., 554 N.E.2d 1145, 1150, *trans. denied.* Quantitatively, evidence may fail only where there is none at all. *Carbo, Inc. v. Lowe* (1988), Ind.App., 521 N.E.2d 977, 980, *trans. denied.* Qualitatively, however, it fails when it cannot be said reasonably that the intended inference may logically be drawn therefrom. *Id.* The failure of an inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture. *Id.* A judgment on the evidence is proper only when there is a total absence of evidence in favor of the plaintiff, that is, that the evidence is without conflict and is susceptible of only one inference and that inference is in favor of the defendant. *Montgomery Ward,* 554 N.E.2d at 1150. Or, the inference intended to be proven by the evidence cannot logically be drawn from the proffered evidence without undue speculation. *Id.*

■ Moistner concludes in his brief that the trial court's correctly granted judgment on the evidence:

because [Hampton] failed to satisfy her burden of establishing a prima facie case of negligence against [Moistner]. [Hampton] presented no evidence establishing that [Moistner] proximately caused her injuries and instead relied upon a series of inferences which were based solely upon conjecture and speculation. Because [Hampton] presented no evidence that [Moistner] proximately caused her accident, the trial court properly granted [the motion in Moistner's favor] ...

Appellee brief p. 9–10. A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated, regardless of whether any earlier negligence concurs with other proximate causes of injury or whether another act of negligence intervenes. *McKinney v. Public Service Company* (1992), Ind.App., 597 N.E.2d 1001, 1005, *trans. denied.* Foreseeability is an important, essential factor in the evaluation of proximate cause. *Id.* The determination of what is reasonably foreseeable is not judged by the subjective opinions of those involved, but is based upon the objective standard of due care in avoiding a result which might reasonably have been anticipated in the ordinary experience of people. *Id.* at 1006. If the actor should have realized that his conduct might cause harm to another in substantially the manner in which it is brought about, the harm is universally regarded as the legal consequence of the actor's negligence. *Id.* In *McKinney,* we held that the issue of whether the defendant's obstruction of the roadway was a proximate cause of the plaintiff's injuries was a question to be resolved by the jury. *Id.* at 1008.

Moistner argues that Hampton's case requires an attenuated string of inferences which contravenes the prohibition of inference stacking, citing *Wright Corporation v. Quack* (1988), Ind.App., 526 N.E.2d 216, 218, *trans. denied.* In *Wright,* we noted:

Absent factual evidence, negligence cannot be supported by an inferred chain of events and inferential speculation alone cannot establish negligence. The jury's determination may not be based on mere

conjecture, and one inference may not be superimposed on another. Qualitatively, such an evidentiary process is defective. Because [the] conclusion that [plaintiff] fell on 'what must have been a wet spot' was based upon information [received from persons] who merely observed the fall, it follows that [the jury's finding of liability] was sheer speculation.

... No evidence was presented of any defect in [the] floor that cause the fall. 'Falling and injuring one's self proves nothing. Such happenings are commonplace wherever humans go.' ... '[n]egligence cannot be established by inferential speculation alone'. The jury jumped the gap from reason to speculation.

526 N.E.2d at 218–219 (Citations omitted). In the more recent case of *Sutton v. State* (1991), Ind.App., 571 N.E.2d 1299, we observed:

With regard to the contention that, for the purpose of proving a cause of action, an inference cannot be built upon another inference, our supreme court has concluded with Professor Wigmore that: 'There is no such rule; nor can there be.' [long list of citations] What is actually meant by the statement found in many cases, that an inference cannot be based upon an inference, is that an inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility.

There is no such rule in the sense in which the language itself implies; and if, in a sense, such a rule may be said to exist, the phraseology used to express it is inaccurate and misleading. The meaning is quite different than appears upon its face. The courts have apparently often used this phraseology merely as a convenient way of disposing of evidence which it regarded as too remote or uncertain to prove the ultimate facts at issue; and the language has become a sort of judicial slogan, used carelessly, inaccurately, and to the confusion of the profession.

571 N.E.2d at 1303–1304 (Citations omitted).

■ In the present case, the jury could reasonably have inferred, from the evidence as set out in the FACTS section, that Hamp-

ton's injuries were proximately caused by Moistner's negligence or stubborn refusal to move his truck. The evidence in the light most favorable to Hampton shows that she could not maneuver her car around the Firebird which was stuck behind Moistner's truck. The traffic had cleared in front of Moistner's truck for one and a half blocks before the train came. Considering that the train had not yet been in sight when the crossing guards went down, and that panicked young persons had time to approach and communicate with the police officer before the collision, the jury could reasonably infer that Moistner had sufficient time to move his truck so that Hampton could have driven her car off the tracks and not been hit by the train. Moreover, the jury could have reasonably inferred that, under the circumstances, Moistner could have reasonably foreseen that the train would collide with Hampton if he were not to move his truck.

Although the ultimate fact of proximate cause may involve some inference stacking, we do not find the evidence to be too remote, uncertain or based on speculation or conjecture. Therefore, the trial court could not have appropriately granted judgment on the evidence with respect to the issue of proximate cause.

Moistner points out certain evidence upon which he makes the argument that Hampton could, and should, have gotten off the tracks without being hit by the train. We interpret this argument as similar to the unsuccessful one made in *McKinney*, 597 N.E.2d at 1008, that the evidence demonstrated as a matter of law that plaintiff was more than 50% at fault and thus, defendant should be awarded judgment as a matter of law.

In *McKinney*, we noted that fault apportionment under the Indiana Comparative Fault Act is uniquely a question of fact to be decided by the jury. *Id.* While at some point the apportionment of fault may become a question of law for the court, that point is reached only when there is no dispute in the evidence and the factfinder is able to come to only one logical conclusion. *Id.*

In the present case, and under the facts in the light most favorable to Hampton, we cannot conclude that the evidence establishes, as a matter of law, that Hampton was more than 50% at fault. Therefore, the trial court's judgment on the evidence could not have appropriately been awarded on this basis.

The trial court's award of judgment on the evidence was erroneous. Therefore, we reverse and remand for trial.

Judgment reversed.

BAKER and RILEY, JJ., concur.