**John P. McGARRITY, Appellant–Plaintiff,**

v.

**BERLIN METALS, INC. and Melvin R. Berlin, Appellees–Defendants.[1]**

No. 45A03–0109–CV–303.

Court of Appeals of Indiana.

Aug. 6, 2002.

---

1. McGarrity names both Melvin R. Berlin and Berlin Metals, Inc. as defendants. Defendants claim that Berlin is not a proper defendant as the case against him personally was dismissed. However, as neither party filed an appendix, including the chronological case summary, with this court, we have no basis for evaluating this statement.

Gary K. Matthews, Enslen Enslen & Matthews, Hammond, IN, Attorney for Appellant.

Robert L. Byman, Jenner & Block, Chicago, IL, David C. Jensen, Scott B. Cockrum, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Appellees.

## OPINION

KIRSCH, Judge.

With the sole exception of the war on terrorism, no issue dominates current thought more than the corporate and accountancy ethical scandals which have rocked our country. Insider trading, overstated corporate earnings, shredded documents, and a host of related issues dominate the national news, business journals, and law reviews. It is within this societal framework that the case now before us for decision must be judged.

It arises from a suit John P. McGarrity brought against Berlin Metals, Inc. ("BMI") and Melvin R. Berlin alleging wrongful termination and breach of contract. After his presentation of evidence, the trial court granted the defendants' judgment on the evidence on the wrongful termination claim, allowing the jury to decide McGarrity's breach of contract claim. McGarrity now appeals, raising the following restated issues:

I. Does Indiana law recognize a tort claim for wrongful termination where a corporate financial officer is discharged for refusing to certify false financial and tax records?

II. Whether the trial court erred in excluding BMI's property tax returns for 1997 through 2000.

III. Whether the trial court erred in refusing to instruct the jury on the definition of "good cause" for terminating employment.

We reverse.

## FACTS AND PROCEDURAL HISTORY

In 1993 and 1994, BMI was experiencing financial problems and began a search for an accomplished chief financial officer (CFO). At the advice of a corporate consultant, Berlin, acting on behalf of BMI, contacted McGarrity, interviewed him, and offered him the position. In interviews and dinner meetings between Berlin and his wife and McGarrity and his wife, the McGarritys sought assurances that, if McGarrity left his current position and joined BMI, which would require the family to relocate, the employment arrangement would be permanent. Berlin assured them that his company's employees left employment only of their own accord.

In May 1994, McGarrity began employment with BMI. The CFO position required McGarrity to manage relationships with lenders, creditors, suppliers, and customers. In addition, McGarrity managed the company's accounting system, produced daily reports, and produced budgets and forecasts. One important aspect of McGarrity's position was producing certified monthly financial statements. Through McGarrity's efforts, BMI obtained increasingly large amounts of loans which the company used as operating funds. However, the lender's willingness to grant the loans was contingent upon timely production of certified financial statements reflecting BMI's economic position.

Shortly after McGarrity began his employment, BMI's 1993 business personal property tax return was audited. In preparation for and during the course of the audit, McGarrity discovered a potential problem with the manner in which BMI had classified its inventory. Specifically, BMI classified the bulk of its inventory as finished goods so that they would qualify for the interstate commerce exemption from the personal property tax. McGarrity believed that this classification was inappropriate and that ninety to ninety-five percent of the inventory was raw material subject to full taxation. McGarrity also learned that his predecessor, Patrick Soukup, had disagreed with Berlin on this

issue and as a result had refused to sign the return and was eventually terminated. As a result of this audit, BMI was assessed $94,000 in additional tax liability. McGarrity negotiated with the State for a reduction in interest and penalties associated with the underpayment. McGarrity informed Berlin that while he encouraged undertaking legal tax avoidance measures, he would not participate in any dishonesty to reduce BMI's tax liability.

Berlin and other corporate officers decided in late 1994 to terminate McGarrity's employment.[2] However, they did not communicate this fact to McGarrity and began to search for his replacement. McGarrity and Berlin continued to clash regarding the personal property tax assessment classifications. For the 1996 assessment, McGarrity suggested that BMI move some of its inventory out of Indiana on March 1, 1996 to avoid the property tax, but he and Berlin continued to disagree. Berlin eventually replaced McGarrity on the return preparation assignment with an outside consultant, Edward Krusa, and ordered McGarrity to visit an out-of-state business location on the assessment date. When McGarrity inquired as to what figure to show as the company's tax liability in its accounting records and certified monthly financial statements, Berlin told McGarrity a figure to use. Berlin, however, failed or refused to show McGarrity a copy of the filed property tax return to verify the figure. McGarrity also discovered that BMI had not moved the bulk of the inventory to Illinois on the assessment date as it represented and had created false bills of lading and false entries in the company's inventory tracking system to make it appear as

though the Indiana warehouse held less inventory than it actually did. In August, McGarrity obtained a copy of the return from the tax assessor's office. Based on McGarrity's calculations, BMI's reported tax liability was at least $66,000 too low. McGarrity was trying to determine how to correct this discrepancy with the State and with BMI's financial records when in October 1996, BMI terminated him.

McGarrity brought suit against Berlin and BMI for wrongful termination, claiming that he was fired for failing to comply with BMI's scheme to defraud the State and its lenders by misclassifying and misrepresenting the location of inventory. He also sought punitive damages. In addition, McGarrity's complaint included a count in which he alleged that BMI breached a contract to provide him with employment until his retirement.

At the jury trial, McGarrity sought to introduce BMI's property tax returns for 1997 through 2000, but the trial court refused to admit them, ruling that they were not relevant. At the close of McGarrity's presentation of evidence, BMI and Berlin moved for a judgment on the evidence. The trial court granted the motion with regard to the wrongful termination claim and allowed the breach of contract claim to be decided by the jury. The jury returned a verdict in favor of BMI. McGarrity now appeals.

### DISCUSSION AND DECISION

*I. Wrongful termination claim*

 McGarrity first argues that the trial court erred in granting a judgment on

---

**2.** This fact was apparently adjudicated in the federal court litigation between the parties, although neither party has supplied us with the federal court's decision in that case. We will assume that the issue is res judicata in this case. *See Mendenhall v. City of Indianap-*

*olis,* 717 N.E.2d 1218, 1225 (Ind.Ct.App. 1999), *trans. denied* (2000) (former adjudication is conclusive as to those issues which were actually litigated and determined therein).

the evidence on his claim for wrongful termination and his concomitant demand for punitive damages. Motions for judgment on the evidence (directed verdict) are governed by Indiana Trial Rule 50. *Hoosier Ins. Co. v. North South Trucking Supplies, Inc.,* 684 N.E.2d 1164, 1168 (Ind. Ct.App.1997). Pursuant to that rule, a judgment on the evidence is proper only when there is a total absence of evidence in favor of the non-moving party, that is, the evidence is without conflict and is susceptible of only one inference and that inference is in favor of the movant. *Ross v. Lowe,* 619 N.E.2d 911, 914 (Ind.1993); *Hoosier Ins. Co.,* 684 N.E.2d at 1168; *Hampton v. Moistner,* 654 N.E.2d 1191, 1193 (Ind.Ct.App.1995); *Teitge v. Remy Constr. Co., Inc.,* 526 N.E.2d 1008, 1010 (Ind.Ct.App.1988). The trial court must view the evidence in the light most favorable to the non-moving party, and if there is any evidence of probative value or reasonable inference therefrom which supports that party's claim, or if the evidence conflicts such that reasonable minds might draw differing conclusions, judgment on the evidence is inappropriate. *Ross,* 619 N.E.2d at 914; *Keith v. Mendus,* 661 N.E.2d 26, 35 (Ind.Ct.App.1996), *trans. denied; Teitge,* 526 N.E.2d at 1010. The court may not substitute its judgment for that of the jury on questions of fact nor grant the motion because the evidence decidedly preponderates in favor of the moving party. *Hoosier Ins. Co.,* 684 N.E.2d at 1168.

 In reviewing the grant of judgment on the evidence, this court also considers only the evidence and reasonable inferences most favorable to the non-moving party. *Ross,* 619 N.E.2d at 914. We examine the evidence and the reasonable inferences most favorable to the plaintiff from a quantitative as well as a qualitative perspective. *Hampton,* 654 N.E.2d at 1193. Quantitatively, evidence may fail only where there is none at all. *Id.* Qualitatively, however, it fails when it cannot be said reasonably that the intended inference may logically be drawn therefrom. *Id.* The failure of an inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture. *Id.*

 McGarrity claims that his employment was terminated for refusing to be a party to an illegal, fraudulent scheme of underreporting tax liability. Absent a set term of employment, an employment relationship is at will. *Indianapolis Osteopathic Hosp., Inc. v. Jones,* 669 N.E.2d 431, 433 (Ind.Ct.App.1996); *Haas Carriage, Inc. v. Berna,* 651 N.E.2d 284, 288 (Ind.Ct.App.1995). However, our supreme court has recognized some limited exceptions to the employment at will doctrine. *Haas Carriage,* 651 N.E.2d at 288. For instance, courts recognize a cause of action for retaliatory discharge when an employee is discharged solely for exercising a statutorily conferred right. *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 252, 297 N.E.2d 425, 428 (1973). Also, an at will employee allegedly fired for refusing to commit an unlawful act for which he would be personally liable may bring a cause of action for wrongful discharge. *Haas Carriage,* 651 N.E.2d at 288. As our supreme court has explained:

"[F]iring an employee for refusing to commit an illegal act for which he would be personally liable is as much a violation of public policy declared by the legislature as firing an employee for filing a workmen's compensation claim.

. . .

. . . Employees faced with the choice of losing their jobs or committing an illegal act for which they might not be caught would feel pressure to break the law simply out of financial necessity. Em-

ployers, knowing the employees' susceptibility to such threats and the absence of civil retribution, would be prompted to present such an ultimatum.

The law will not countenance such a situation."

*McClanahan v. Remington Freight Lines, Inc.,* 517 N.E.2d 390, 393 (Ind.1988).

▮▮▮▮ The retaliatory discharge of an employee at will gives rise to a cause of action in tort, rather than a claim for breach of employment contract. *Remington Freight Lines, Inc. v. Larkey,* 644 N.E.2d 931, 940 (Ind.Ct.App.1994). This tort may support an award of punitive damages. *Haas Carriage, Inc.,* 651 N.E.2d at 290. Punitive damages may be recovered only if there is clear and convincing evidence that the defendant's conduct was "inconsistent with the hypothesis that the tortious conduct was the result of a mistake of fact or law, honest error of judgment, over-zealousness, mere negligence, or other such noniniquitous human failing." *Id.* (quoting *Reed v. Central Soya Co., Inc.,* 621 N.E.2d 1069, 1076 (Ind. 1993), *modified on other grounds,* 644 N.E.2d 84 (Ind.1994)). Whether a party may recover punitive damages is usually a question for the finder of fact. *Id.*

We addressed a claim similar to McGarrity's in *Haas Carriage,* 651 N.E.2d at 288–89. In that case, the plaintiff was employed as a truck driver. He alleged that he was discharged for refusing to haul a load of steel coils that he claimed was unsafe and unlawful. The trial court found that the plaintiff would have violated any of several statutes by transporting the load in question and concluded that while the employer did not expressly request that the plaintiff commit an illegal act, it knew or should have known that it was requiring its drivers to commit illegal acts. *Id.*

In affirming the trial court, we observed that the evidence showed that the plaintiff's only objection to hauling the load in question was that it was unsafe and that it was the driver's responsibility to ensure the load's safety. We noted the statutes which specify criminal penalties for a driver who operates a vehicle carrying an improperly secured load, operates a tractor-trailer combination in a reckless attempt to endanger the safety or property of others, or violates certain federal safety regulations. We further noted the expert testimony of a police officer that the manner the employer used to secure loads of steel coils did not comply with federal regulations. Based on this evidence, we concluded that there was sufficient evidence to support the trial court's finding that the employee was discharged for refusing to commit an illegal act. *Id. See also McClanahan,* 517 N.E.2d at 393–94 (holding that plaintiff stated a cause of action when he alleged he was wrongfully discharged for refusing to commit an illegal act for which he would have been personally liable).

▮▮▮▮ Here, McGarrity testified that upon his employment, one of his duties as CFO was preparation of the personal property tax return. He also presented evidence that BMI, in preparing its 1993 personal property tax return, classified its inventory primarily as finished goods destined for interstate commerce, rather than raw materials, in contravention of his predecessor's recommendation. In doing so, BMI underreported its tax liability and after being audited incurred additional tax liability, penalties, and interest. In spite of this, BMI persisted in this course of conduct. McGarrity and his expert, Richard A. Hutmacher, testified that completing the return as required by BMI amounted to illegal tax evasion. IC 6–1.1–37–3 makes it a Class D felony for a person to make and subscribe a property tax return, statement, or document that he

or she does not believe is correct in every material respect. When McGarrity refused to participate, he was removed from the assignment of preparing the tax return and sent to a remote location so as not to witness the actual assessment. However, upon his return, he discovered that the inventory records misstated at which location the inventory was actually stored, and that the inventory was, once again, misclassified, resulting in underreporting of tax liability.

Berlin then told McGarrity to prepare BMI's monthly financial statements for among others, BMI's lenders, which McGarrity was required to certify as accurate and truthful, with the lower liability figure. These financial statements were then used by BMI's creditors to evaluate whether to continue extending the company credit or to extend it additional credit. IC 35–43–5–8 makes it a Class C felony to knowingly execute, or attempt to execute, a scheme or artifice to defraud a state or federally chartered or federally insured financial institution, or to obtain any of the funds or credits of a state or federally chartered or federally insured financial institution by means of false or fraudulent representations.

Moreover, corporations are statutorily obligated to maintain appropriate accounting records. IC 23–1–52–1(b). BMI's directives required McGarrity to violate this obligation. In light of the current crisis in the financial markets involving inaccurate financial statements which misstate a company's financial position, we cannot condone BMI's actions in apparently deliberately underreporting its tax liability and intentionally preparing financial statements which understate its liabilities. BMI's conduct required McGarrity to violate any of a number of laws for which he could be held personally liable either directly or based upon a conspiracy theory.

*See* IC 35–41–5–2 (creating liability for participation in conspiracy).

BMI responds that McGarrity was not asked directly to commit any illegal act. Rather, BMI argues that this case is governed by such cases as *Campbell v. Eli Lilly & Co.,* 413 N.E.2d 1054, 1061 (Ind.Ct. App.1980), *trans. denied* (1981), in which the courts have refused to extend the wrongful termination exception to the employment at will doctrine to employees whose employment is terminated for "whistle-blowing," or reporting their employer's misdeeds. *See also Martin v. Platt,* 179 Ind.App., 688, 692–93, 386 N.E.2d 1026, 1028 (1979) (no public policy exception for employee who reported kickbacks received by superior). It also cites *Wior v. Anchor Indus., Inc.,* 669 N.E.2d 172, 177–78 (Ind.1996), in which our supreme court held that a plaintiff did not state a valid cause of action where he claimed that his employment was terminated because he refused to terminate a subordinate for filing a worker's compensation claim. The plaintiff argued that the public interest in an injured employee being able to seek worker's compensation benefits was strong enough to warrant protection by creating a cause of action on behalf of the supervisor who refused to terminate him or her. *Id.*

However, the supreme court disagreed, explaining that the interest at stake is adequately protected by the terminated employee's cause of action. Because the court was reluctant to broaden the exception to the employment at will doctrine and because the plaintiff did not identify any statutory right or duty involved, the court declined to extend the wrongful termination action to include the plaintiff's situation. *Id.*

By contrast, here, McGarrity was terminated not for refusing his employer's command to violate public policy. Rather, tak-

ing the facts in the light most favorable to McGarrity, he was fired for refusing to incur personal liability for felony fraud, filing a fraudulent tax return, failing a corporate responsibility, or a conspiracy to commit any of the former crimes. Unlike the plaintiff in *Wior*, McGarrity does not ask us to extend the exception to the at will employment doctrine by "borrowing" someone else's cause of action. Instead, it is McGarrity himself who was terminated for his refusal to join in BMI's conduct.

■ BMI also argues that there is no causal link between McGarrity's position regarding the personal property tax assessment and his termination. In support of this argument, it points to the timing of the decision to terminate McGarrity and its proffered legitimate reasons for terminating his employment. Although there was a significant lapse of time between the time BMI decided to terminate McGarrity and the date of his termination, we do not find this fact relevant to the consideration of BMI's motives. Rather, the elapse of time prior to McGarrity's termination seems to be more related to BMI's extended and difficult search for his replacement than with its motivation to terminate his employment. Our review of the record discloses that prior to the decision to terminate in 1994, McGarrity had already expressed his disapproval of BMI's tax reporting approach and had voiced his refusal to cooperate. Thus, BMI's motives appear to have crystallized long before it was in a position to act on them. Further, while BMI did offer legitimate reasons for McGarrity's termination, McGarrity's evidence created a factual question regarding the company's actual motives for terminating his employment. The question of the existence of a retaliatory motive for a discharge is a question for the trier of fact. *Dale v. J.G. Bowers, Inc.*, 709 N.E.2d 366, 369 (Ind.Ct.App.

1999). Accordingly, the issue should have been decided by the jury. The trial court erred in granting a judgment on the evidence on McGarrity's claim for wrongful termination and his claim for punitive damages.

## II. Refusal of business personal property tax returns

■ McGarrity next contends that the trial court erred in refusing to admit BMI's business personal property tax returns for the years subsequent to his termination, 1997 to 2000.

■ A trial court's decision regarding the admission of evidence will be accorded a great deal of deference. *Fitch v. Maesch*, 690 N.E.2d 350, 352 (Ind.Ct.App. 1998), *trans. denied.* We will disturb the trial court's ruling on matters of relevancy only where there is an abuse of discretion. *Id.* The party appealing the trial court's ruling on a relevancy question bears the burden of showing that it was clearly erroneous and prejudicial. *Id.*

■ Indiana Rule of Evidence 401 provides that relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevancy is the logical tendency of evidence to prove a material fact. *Blinn v. State*, 677 N.E.2d 51, 52 (Ind.Ct.App.1997). Evidence that tends to prove a material fact is admissible even though its tendency to prove the material fact may be slight. *Id.*

Here, McGarrity claimed that BMI engaged in an ongoing illegal scheme to underreport its personal property tax liability and that his employment was terminated for refusing to participate in the scheme. He presented evidence that BMI engaged in the allegedly illegal con-

duct prior to his employment and that his predecessor clashed with Berlin on the subject. He also presented evidence that BMI continued its approach to personal property tax valuations during his employment there, which caused considerable friction between him and Berlin. BMI's personal property tax returns for the years after McGarrity's employment was terminated would demonstrate whether BMI continued to classify inventory and understate its tax liability after it ended McGarrity's association with the company. Thus, the evidence was relevant to BMI's actual motive for terminating McGarrity, that is, for his refusal to participate in preparing the tax returns with this method, and the trial court abused its discretion in refusing to admit the evidence.

*III. Jury instruction on "good cause"*

Finally, McGarrity maintains that the trial court erred in not instructing the jury as to the definition of "good cause" for termination of employment. McGarrity's second claim against BMI was for breach of contract. He alleged that he accepted BMI's offer of employment for the remainder of his work career, but that BMI then breached that contract when it terminated his employment. In support of his argument, he requested that the jury be instructed as to what constitutes "good cause" for terminating an employee's employment. BMI argues that the trial court's instruction on "good cause" was adequate.

 Instruction of the jury is left to the sound judgment of the trial court, and we will not disturb the court's judgment absent an abuse of discretion. *Kostidis v. General Cinema Corp. of Indiana,* 754 N.E.2d 563, 570 (Ind.Ct.App.2001). Nonetheless, a party is normally entitled to have a tendered instruction read to the jury. *Wallace v. Rosen,* 765 N.E.2d 192,

195 (Ind.Ct.App.2002) (citing *Marshall v. Clark Equip. Co.,* 680 N.E.2d 1102, 1104 (Ind.Ct.App.1997), *trans. denied* (1998); *Morris v. K–Mart, Inc.,* 621 N.E.2d 1147, 1148 (Ind.Ct.App.1993), *trans. denied* (1994)). In determining whether the trial court erroneously refused a tendered instruction, we consider: (1) whether the tendered instruction correctly states the law; (2) whether there is evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions. *Control Techniques, Inc. v. Johnson,* 762 N.E.2d 104, 109 (Ind.2002); *Wallace,* 765 N.E.2d at 196; *Kostidis,* 754 N.E.2d at 570. An instruction is properly rejected if it would tend to mislead or confuse the jury. *Wallace,* 765 N.E.2d at 196 (citing *Barnard v. Himes,* 719 N.E.2d 862, 868 (Ind.Ct.App.1999), *trans. denied* (2000)). Finally, even if an instruction is a correct statement of the law, is supported by the evidence, and is not covered by the other instructions, we will not reverse a trial court's decision to refuse an instruction unless the failure to give the instruction substantially and adversely affects the rights of the complaining party so as to quite likely have affected the result. *Id.*

 McGarrity's tendered instruction stated:

"I instruct you that good cause or just cause to discharge an employee for not performing the job he was employed to do means that the employee:

is not qualified to do the work which he undertakes;

is incompetent;

is unskillful or inefficient; or

if sic he executes his work in a negligent manner or is otherwise guilty of neglect of duty.

The employee must exercise ordinary and reasonable care commensurate with the position of his employment in fulfill-

ing his work responsibilities, but he cannot be discharged merely because he failed to employ the highest degree of skillfulness and care known to the business community."

*Appellant's Brief* at 43. In *Romack v. Public Serv. Co. of Indiana,* 511 N.E.2d 1024, 1026 (Ind.1987), our supreme court granted transfer and adopted and incorporated by reference Judge Conover's opinion in *Romack v. Public Serv. Co. of Indiana, Inc.,* 499 N.E.2d 768, 778 (Ind.Ct. App.1986), in which he developed an exception to the employment at will doctrine where (1) the employer knows the employee had a former job with assured permanency (or assured non-arbitrary firing policies) and (2) was only accepting the new job upon receiving assurances the new employer could guarantee similar permanency. In such cases, he explained that good cause must be shown to terminate an employee without liability. He concluded, "So long as the recruited employee is performing the job he was sought out to do, there must be some good reason to fire him, apart from the whim of the employer." *Id.* at 778.

This court had occasion to flesh out what constitutes good cause in *Seco Chemicals, Inc., Div'n of Stan Sax Corp. v. Stewart,* 169 Ind.App. 624, 633–34, 349 N.E.2d 733, 738–39 (1976), where we looked to 53 AM. JUR.2D, *Master and Servant* § 51, at 126–27 and concluded that "good cause" embodies concepts of inefficiency, unskillfulness, neglect, or carelessness. An employee must be competent to perform the work undertaken, must have the requisite skill and knowledge to enable him or her to do it, and must do the work in a careful manner. If the employee is not qualified to do the work which he or she undertakes, if he or she is incompetent, unskillful or inefficient, or if he or she executes his or her work in a negligent manner or is otherwise guilty of neglect of duty, he or

she may lawfully be discharged before the expiration of the term of employment. *Id.*

We cited with approval the commentator, who explained that an employee cannot be discharged on the ground of incompetency, negligence, etc., because he or she fails to employ the highest degree of skillfulness and care known in the trade, unless the contract of employment expressly stipulates for that degree of skill and care, or unless the employee represents that he or she possesses it. *Id.* Based on this explanation, we concluded that an employer's right to discharge must be based on material matters rather than trivialities. *Id.* at 634, 349 N.E.2d at 739. McGarrity's tendered instruction closely tracks this explanation of good cause in form and substance. Thus, we conclude that McGarrity's tendered instruction correctly stated the law.

Further, there was evidence in the record to support McGarrity's claim that BMI promised him permanent employment. Both McGarrity and his wife, Patricia McGarrity, testified that Berlin recruited McGarrity to come to work for BMI. They testified that McGarrity had a permanent position with the Rumsey Group when he was contacted by BMI. Further, they both testified that during the recruiting process, they stated that they were not interested in relocating and leaving their current employment unless McGarrity's employment were permanent, and they received assurances from Berlin that it would be. If such evidence were credited, the jury could have found a promise of permanent employment, which would have permitted McGarrity's termination only upon good cause. Thus, there was sufficient evidence to support giving the instruction defining this term.

In addition, no other instruction covered the same material. As to reasons for ter-

mination, the trial court instructed the jury:

> "If, on the other hand, you find that Mr. McGarrity has proven [a promise of permanent employment], then Berlin could not terminate his employment unless it had good cause to do so, so long as the employee is performing the job as he was sought out to do. There must be some good reason to have him fired apart from whim."

*Transcript* at 1183–84. Although this instruction generally conveys the notion of good cause, it does not define the term with the particularity that McGarrity's proposed instruction does. McGarrity's instruction supplies additional guidance to the jury regarding which of the reasons proffered by BMI satisfied the legal standard of good cause. Thus, we cannot conclude that the substance of the proposed instruction was covered in the other instructions given by the trial court.

Finally, after examining the record, we cannot conclude that the trial court's refusal to give this instruction did not substantially impact McGarrity's rights. The central issue in McGarrity's breach of contract claim was whether BMI terminated his employment for a legitimate reason. Without any instruction as to what such reason may or may not entail, the jury was left without guidance about what a proper motive for termination might have been. Accordingly, the trial court erred in refusing the tendered instruction.

Reversed and remanded for proceedings consistent with this opinion.

MATHIAS, J., and BARNES, J., concur.