Dege R. COUTEE, Appellant–Plaintiff,

v.

LAFAYETTE NEIGHBORHOOD HOUSING SERVICES, INC., Appellee–Defendant.

No. 79A04–0210–CV–513.

Court of Appeals of Indiana.

Aug. 5, 2003.

Michael L. Schultz, Laudig George Rutherford & Sipes, Indianapolis, IN, Attorney for Appellant.

Eric D. Johnson, Marcia A. Mahoney, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

After Dege R. Coutee was fired from her employment at Lafayette Neighborhood Housing Services, Inc. ("LNHS"), she sued and alleged that she was unlawfully discharged in retaliation for reporting what she believed to be a misuse of public resources and that her termination violated IC 22–5–3–3, Indiana's whistle-blower statute. She appeals the trial court's grant of summary judgment to LNHS and raises three issues, which we consolidate and restate as follows:

I. Whether her common law claim for retaliatory discharge falls within Indiana's public policy exception to the employment at-will doctrine.

II. Whether a management style that results in high employee turnover constitutes "a misuse of public resources" within the meaning of IC 22–5–3–3.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Congress's 1978 Neighborhood Reinvestment Corporation Act established a not-for-profit corporation called Neighborhood Reinvestment Corporation ("NRC"), authorizing it "to receive and expend Federal appropriations and other public and private revenues to conduct a variety of programs designed primarily to revitalize older urban neighborhoods by mobilizing public, private, and community resources at the neighborhood level." 24 C.F.R. § 4100.1(b). NRC provides funding to a number of housing agencies throughout the United States, including LNHS, a private not-for-profit partnership, whose purpose is "to renew pride and confidence in neighborhoods; promote reinvestment in neighborhoods; and provide decent, affordable housing for low-to-moderate income persons, in cooperation with residents, the business community, local government, and other interested persons in order to strengthen neighborhoods and prevent deterioration by stabilizing and improving property values." *Appellant's Appendix* at 113. LNHS receives a portion of its funding from NRC in the form of capital grants, intended for use as working capital, and expendable grants, intended for use in operating and program costs. *Appellant's Brief* at 17–18.

On November 22, 1996, Patricia Stephenson ("Stephenson"), LNHS Executive Director since 1988, hired Coutee as Property Manager for LNHS. Shortly after she began, Coutee briefly met Debra Scott, an

employee of NRC, when Scott was visiting the LNHS facility for one of NRC's reviews of LNHS. Scott noted to Coutee her observation that LNHS seemed to have an unusually high employee turnover rate and rhetorically wondered why that was so. As a new employee, Coutee had no specific answer to Scott's comments.

Over time, Coutee became frustrated and upset with Stephenson's management of LNHS, which Coutee felt led to employee turnover and employee dissatisfaction. On June 12, 1998, Coutee wrote to Scott as follows:

> Dear Ms. Debra Scott,
>
> I spoke with you briefly during a program review of Lafayette NHS in Indiana. I had just started as property manager days before. I am still working with the organization—however, several people have left during my time there; two have given their notice as of this morning. I write to you because I am concerned about the direction of the organization. If I may confide in you, please contact me at [telephone number].
>
> Sincerely,
>
> Dege Coutee
>
> 626 Oregon Street

*Appellant's Appendix* at 71.

On July 6, 1998, Stephenson learned about Coutee's letter to Scott. Thereafter, Stephenson prepared and presented Coutee with a Corrective Action Form, in which Stephenson identified four incidents in which Coutee allegedly displayed "unwillingness to cooperate with management of Lafayette NHS," including the letter to Scott. *Appellant's Appendix* at 73-74. Coutee refused to discuss the Corrective Action Form and stated that she would only communicate with Stephenson in writing. At that point, Stephenson gave Coutee the option of resigning or being

terminated. Coutee refused to speak with Stephenson, and Stephenson terminated Coutee.

Coutee filed a complaint alleging a common law retaliatory discharge claim and a violation of IC 22–5–3–3, Indiana's whistleblower statute. *See Appellant's Appendix* at 130. LNHS filed a motion for summary judgment, which the trial court granted following a hearing. Coutee now appeals.

## DISCUSSION AND DECISION

■ Summary judgment is appropriate only if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). The party moving for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Markley Enters., Inc. v. Grover*, 716 N.E.2d 559, 564 (Ind.Ct.App.1999). Only if the movant sustains this burden does the burden shift to the opponent to set forth specific facts showing that there is a genuine issue of material fact. *Id.* On appeal of trial court's decision on a motion for summary judgment, we apply the same standard as the trial court and construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party. *Id.* at 563–64. The party that lost in the trial court has the burden of persuading this court that the trial court erred. *Id.* at 564.

### I. Common Law Claim for Retaliatory Discharge

■ Initially, we address Coutee's common law retaliatory discharge claim against LNHS. In so doing, we recognize that her statement of issues does not expressly challenge the trial court's sum-

mary judgment dismissal of this claim; however, because she broaches the subject of retaliatory discharge in her argument, *Appellant's Brief* at 23–27, we conclude that discussion of such claim is warranted.

■ Indiana law provides that if there is no definite or ascertainable term of employment, then the employment is at-will, and is presumptively terminable at any time, with or without cause. *Id.* at 564; *see also McGarrity v. Berlin Metals, Inc.,* 774 N.E.2d 71, 76–77 (Ind.Ct.App.2002), *trans. denied* (absent set term of employment, employment relationship is at-will).

Our supreme court has recognized only three exceptions to the employment-at-will doctrine. First, if an employee establishes that "adequate independent consideration" supports the employment contract, then the parties are considered to have intended to establish a relationship in which the employer may terminate the employee only for good cause. *Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712, 718 (Ind.1997). For example, adequate independent consideration is provided when the employer is aware that "the employee had a former job with assured permanency" and "the employee was only accepting the new job upon receiving assurances the new employer could guarantee similar permanency," or when the employee entered into a settlement agreement releasing the employer from liability on an employment-related claim against the employer. *Id.*

Second, a public policy exception to the employment-at-will doctrine exists if a clear statutory expression of a right or duty is contravened, for example when an employee is discharged for filing a worker's compensation claim, *Frampton v. Cent. Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973), or when an employee is discharged for refusing to commit an illegal act for which he would be personally liable, *McGarrity,* 774 N.E.2d at 76.

Third, our supreme court recognized that, in certain instances, an employee may invoke the doctrine of promissory estoppel. To do so, the employee must assert and demonstrate that the employer made a promise to the employee, that the employee relied on that promise to his detriment, and that the promise otherwise fits within the Restatement test for promissory estoppel. *Orr,* 689 N.E.2d at 718 (citing *Jarboe v. Landmark Cmty. Newspapers of Indiana, Inc.,* 644 N.E.2d 118, 121 (Ind. 1995)) (adopting RESTATEMENT (SECOND) OF CONTRACTS § 90(1) (1981)).

In this case, Coutee's argument focuses only on the causation element of her retaliatory discharge claim, arguing that her letter to Scott was the motivating factor that caused LNHS to terminate her employment. However, she neither addresses the matter of Indiana's employment-at-will doctrine nor expressly identifies under which of the recognized exceptions to the employment-at-will doctrine her common law claim falls. To the extent that she claims that her termination violated public policy because it was in retaliation for exercising a statutory right to "blow the whistle" on LNHS, our General Assembly legislated this protection in IC 22–5–3–3, which established the right of certain employees to report employer misconduct without retaliation.[1]

Here, the trial court determined, "[I]f plaintiff has a cause of action, it is under the statute, not the common law." *Appellant's Appendix* at 11. We agree and affirm the trial court's grant of summary

---

1. IC 22–5–3–3 applies only to employees of a private employer that is under public contract.

judgment to LNHS on Coutee's common law claim.

## II. Statutory Claim under IC 22–5–3–3

[7, 8] Turning to Coutee's statutory claim, IC 22–5–3–3 provides in pertinent part:

(a) An employee of a private employer that is under public contract may report in writing the existence of:

(1) a violation of a federal law or regulation;

(2) a violation of a state law or rule;

(3) a violation of an ordinance of a political subdivision (as defined in IC 36–1–2–13); or

(4) *the misuse of public resources;*

concerning the execution of public contract first to the private employer, unless the private employer is the person whom the employee believes is committing the violation or misuse of public resources. In that case, the employee may report the violation or misuse of public resources in writing to either the private employer or to any official or agency entitled to receive a report from the state ethics commission under IC 4–2–6–4(b)(2)(G) or IC 4–2–6–4(b)(2)(H)....

(b) For having made a report under subsection (a), an employee may not:

(1) be dismissed from employment[.]

(Emphasis added.)

▮▮▮ Indiana courts have not had occasion to apply IC 22–5–3–3 or interpret its terms. Where a statute has not been previously construed, " 'the express lan-

guage of the statute and the rules of statutory construction apply.' " *Koppin v. Strode,* 761 N.E.2d 455, 460 (Ind.Ct.App. 2002), *trans. denied* (quoting *Indiana State Teachers Ass'n v. Bd. of School Comm'rs of the City of Indianapolis,* 693 N.E.2d 972, 974 (Ind.Ct.App.1998)). " '[W]hen a statute is clear and unambiguous on its face, this court need not, and indeed may not, interpret the statute.' " *South Bend Tribune v. South Bend Cmty. Sch. Corp.,* 740 N.E.2d 937, 938 (Ind.Ct. App.2000) (quoting *Miller v. Walker,* 642 N.E.2d 1000, 1001–02 (Ind.Ct.App.1994), *aff'd by* 655 N.E.2d 47 (Ind.1995)). However, when the language is susceptible to more than one construction, it is ambiguous, and we must construe the statute to determine the legislature's intent. *Koppin,* 761 N.E.2d at 460. When construing a statute, a court will endeavor to interpret a statute in such a way that prevents surplusage. ·*Bressler Outdoor Adver., LLC v. City of Fort Wayne Bd. of Zoning Appeals,* 777 N.E.2d 754, 756 (Ind.Ct.App. 2002), *trans. denied* (2003).

▮▮▮ This case involves a question of statutory interpretation, which is a question of law reserved for the courts. *South Bend Tribune,* 740 N.E.2d at 938. Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.*

Finding that the term "misuse of public resources" was general and ambiguous, the trial court applied the canons of *noscitur a sociis*[2] and *ejusdem generis*[3] and

---

2. "When two or more words, susceptible of analogous meaning, are coupled together, noscitur a sociis, they are understood to be in the cognate sense. They take, as it were, their color from each other; that is, the more general is restricted to a sense analogous to the less general." *Appellant's Appendix* at 13 (summary judgment order citing *Hyland v. Rochelle,* 179 Ind. 671, 679, 100 N.E. 842

(1913) (quoting *State v. Lowry,* 166 Ind. 372, 77 N.E. 728 (1906)); and *Wiggins v. State,* 727 N.E.2d 1, 10–11 (Ind.Ct.App.2000), *trans. denied* ).

3. "In the construction of laws ... the 'ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specific

determined that the statute's term "misuse of public resources" was "intended to refer to an ethical violation involving public money subject to review by the Ethics Commission," and was not intended to address "mere mismanagement." *Appellant's Appendix* at 13.

Coutee first argues that the trial court failed to apply the plain meaning of the term "misuse" and instead "ventured into canons of statutory construction and ultimately resolved the term 'misuse' in a way that does substantial violence to the intent of the statute." *Appellant's Brief* at 6. Coutee states that the common and ordinary meaning of misuse is "to use improperly or incorrectly." *Id.* at 9 (citing THE NEW LEXICON WEBSTER'S DICTIONARY 640 (1991)). We do not dispute the proposition that "to use improperly or incorrectly" is a typical dictionary definition of misuse. *See also* WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 759 (1984) (to use incorrectly; to mistreat or abuse). However, we find that the application of the "to use improperly or incorrectly" definition is susceptible to more than one interpretation. For instance, does the word "use" require that a person or entity expressly spend or apply funds, or can funds be "used" implicitly through waste or inefficiency? Given the possibility of differing meanings, we conclude, as did the trial court, that the term "misuse of public resources" is ambiguous and properly subject to judicial construction.

Coutee next asserts that even if it were appropriate to interpret the term "misuse of public resources," the trial court's construction was too narrow. She explains that by the legislature's deliberate use of the word "misuse," it intended to provide protection to employees for the reporting of something other than or less than violations, and that if protection were only afforded to employees that report "violations," then employees would be discouraged or less likely to report questionable conduct. She thus asserts that the trial court's interpretation undermined the purpose of the statute as follows: "[T]he public policy of the State of Indiana as expressed in IC 22-5-3-3 appears to be to encourage the free flow of information regarding the performance of people working under a 'public contract.' The trial court's ruling ... [has] precisely the opposite effect." *Appellant's Brief* at 7.

Coutee continues her argument by contending that the statute's own structure indicates that the legislature intended to distinguish "misuse" from a "violation." For instance, subsections (1), (2), and (3) of IC 22-5-3-3(a) each refer to a "violation," whereas subsection (4) uses the term "misuse." She further observes that throughout the statute's text the legislature maintained the "misuse" versus "violation" distinction: The employee is instructed to report first to the private employer involved, unless that is the person who allegedly is committing "the violation or misuse of public resources," and, in that case, the employee may report "the violation or misuse" to other referenced persons or entities. IC 22-5-3-3(a). She opines that the trial court's interpretation that equated "misuse" to a "violation" effectively rendered the fourth subsection of IC 22-5-3-3(a) listing "misuse of public resources" as mere surplusage.

We agree with Coutee to a limited extent. We do not believe that "misuse" is

meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specif-ically mentioned." *Appellant's Appendix* at 13 (citing *J.A.W. v. Marion County Dep't of Pub. Welfare*, 687 N.E.2d 1202, 1210 n. 21 (Ind.1997)).

the equivalent of a "violation," and we acknowledge the possibility that the trial court's definition could render the fourth subsection concerning reporting of "misuse" as surplusage. However, we also do not believe that the proper construction of "misuse" is as broad as Coutee contends.

Instead, we hold that "misuse of public resources" as used in IC 22–5–3–3 contemplates a direct expenditure or use of public funds, property, or resources for a purpose other than that contemplated by the contract in question. Under this construction, "misuse" includes instances where public funds earmarked for a specific purpose by the contract were misspent, whether intentionally or not, for another purpose, whether legitimate or not, and does not necessarily require ethical impropriety, as the trial court's definition implied. For example, misuse would exist if an employee used public funds for personal purposes or applied the funds to a cause or purpose contrary to or beyond the scope of the directive(s) of the contract. Given our construction, we conclude that misuse in the context of IC 22–5–3–3 does not include allegations of ineffective management style that might result in increased administrative costs to the employer due to employee turnover.

Affirmed.

MAY and MATHIAS, JJ., concur.