Kathie SCHLOOT and Carl Schloot, Appellants–Plaintiffs,

v.

GUINEVERE REAL ESTATE CORP. and Duke Associates, Appellees–Defendants.

No. 49A04–9706–CV–258.

Court of Appeals of Indiana.

July 29, 1998.

---

William Levy, Jon D. Krahulik, Yosha Krahulik & Levy, Indianapolis, for Appellants–Plaintiffs.

Donald G. Orzeske, Donald K. Broad, McMains Goodin & Orzeske, P.C., Indianapolis, for Appellees–Defendants.

## OPINION

GARRARD, Judge.

Kathie and Carl Schloot (collectively "Schloots") appeal the trial court's grant of Guinevere Real Estate and Duke Associates' (collectively "Duke") motion for judgment on the evidence.

We reverse and remand.

## FACTS

On the morning of February 6, 1992, Kathie slipped and fell in the employee parking lot of Jacobson's Department Store as she exited her vehicle to go to work. Kathie immediately began to feel pain in her lower back. As she made her way into work after the fall, Kathie noticed that the entire employee parking lot was slick and covered with ice. Kathie attempted to work that day, but the pain in her back forced her to leave work. When the pain in her back did not diminish, Kathie sought medical help. Despite various medications and medical consultations, Kathie continued to experience pain in her lower back.

Eventually, the Schloots filed a negligence suit against Duke to recover for Kathie's back injuries. During the jury trial, the Schloots attempted to admit Kathie's medical records over the objection of Duke. Relying on the business record exception to the hearsay rule [1], the trial court admitted the medical records. At the end of the Schloots' case, Duke moved for judgment on the evidence and, alternatively, partial judgment on the evidence concerning various specific back injuries. The trial court granted Duke's motion and entered judgment on the evidence in favor of Duke. The Schloots appeal this judgment.

1. Ind.Evidence Rule 803(6).

## ISSUE

The Schloots raise one issue on appeal which we restate as:

I. Whether the trial court erred by granting Duke's motion for judgment on the evidence.

## DISCUSSION

█ When reviewing a challenge to a ruling on a motion for judgment on the evidence, we use the same standard as the trial court. *Daub v. Daub,* 629 N.E.2d 873, 877 (Ind.Ct.App.1994), *trans. denied.* We will look only to the evidence and the reasonable inferences therefrom most favorable to the nonmoving party. *Id.* "A judgment on the evidence is proper only when there is a total absence of evidence in favor of the plaintiff, that is, that the evidence is without conflict and is susceptible of only one inference and that inference is in favor of the defendant." *Hampton v. Moistner,* 654 N.E.2d 1191, 1193 (Ind.Ct.App.1995). The tort of negligence consists of three elements: duty, breach of that duty, and proximate cause. *Douglass v. Irvin,* 549 N.E.2d 368, 369 (Ind.1990). In order to justify the trial court's grant of judgment on the evidence, there must be a total absence of evidence of one of the three elements of the Schloots' negligence claim. *Daub,* 629 N.E.2d at 877. With this standard in mind, we now turn to each of the three elements of the Schloots' negligence claim.

█ The Schloots first argue that Duke had a duty to exercise reasonable care to protect Kathie from injury. Duke attacks the authority cited by the Schloots on the element of duty and argues that the trial court could have determined as a matter of law that any duty was not breached. Though couched in terms of duty, Duke is in reality attacking the evidence of breach of duty. The question of whether a duty exists is an issue of law to be determined by the trial court. *Douglass,* 549 N.E.2d at 369. "Generally, a landowner has a common law duty to exercise care to keep his property in a reasonably safe condition for business invitees." *Id.; see also Burrell v. Meads,* 569

N.E.2d 637, 639 (Ind.1991); *Dunifon v. Iovino,* 665 N.E.2d 51, 56 (Ind.Ct.App.1996), *trans. denied.* As the landowner, Duke had a duty to exercise reasonable care to protect Kathie. Because Duke owed a duty to Kathie, judgment on the evidence could not have been premised on the element of duty. *Hampton,* 654 N.E.2d at 1193.

■ Next, the Schloots argue that they presented enough evidence at trial to create the reasonable inference that Duke breached its duty by not acting to remedy the slick conditions in the parking lot. Duke contends that there was no evidence that it had actual or constructive knowledge of the slick conditions or that it knew Kathie would not be able to detect and avoid any dangerous conditions. The determination of whether Duke breached its duty to exercise reasonable care is a question of fact. *Douglass,* 549 N.E.2d at 370. For the judgment on the evidence to have been premised on the element of breach of duty, there must not have been any evidence or reasonable inferences that Duke failed to exercise reasonable care. *Hampton,* 654 N.E.2d at 1193. In our review of the evidence concerning this element, we look only to the evidence and reasonable inferences therefrom most favorable to the Schloots. *Daub,* 629 N.E.2d at 877.

■ The evidence presented by the Schloots at trial revealed that at the time of Kathie's fall on February 6th there was a large pile of snow in the employee parking lot and the parking lot had not been plowed or salted since January 26th. The evidence also revealed that temperatures on February 6th and the days immediately preceding it were above freezing during the day and below freezing at night. The Schloots argue that Duke knew or should have known that the piled snow would melt during the days and refreeze at night creating a hazardous condition. Kathie also testified that she did not detect any ice until after she had fallen. Because Kathie did not see any ice prior to her fall, the Schloots argue that Kathie could not have avoided the ice. Though this evidence is less than conclusive, it does support a reasonable inference that Duke should have known of and attempted to remedy the potentially icy conditions. Because the evidence was susceptible of an inference that Duke breached its duty, judgment on the evidence could not have been premised on a lack of evidence of breach of duty.

■ Finally, the Schloots claim that Kathie's testimony and the medical records admitted at trial were sufficient evidence that her fall proximately caused her injuries to prevent judgment on the evidence. Duke contends that the trial court erred by admitting the medical records and that the lack of expert medical testimony concerning the cause and nature of Kathie's injuries justified judgment on the evidence. In essence, Duke argues that the cause of Kathie's back problems was a complicated medical question requiring expert medical testimony and that no expert medical testimony was presented because the medical records were erroneously admitted.

■ When the average lay person cannot understand the issue of causation, expert testimony is necessary. *Id.* at 878. "When an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without expert medical testimony." *Id.* at 877–78. At trial, Kathie testified that she fell flat on her back and began to immediately feel pain. Kathie testified that the pain began after the fall and, despite medical treatment, persisted. We find this situation to be a classic example of the situation where the cause of an injury is objective in nature. Kathie's fall caused, at least, some back pain. We hold that the cause of some injury was objective in nature and, therefore, expert medical testimony was not required. *Id.* That, of course, is not to say that medical evidence was not necessary to establish the extent of injury and damages for which Schloots were seeking recovery. Even without the disputed medical records, the Schloots presented sufficient evidence of proximate cause of some injury to survive Duke's motion for judgment on the evidence. The trial court, therefore, erred by granting Duke's motion for judgment on the evidence.

Because the issue of the admissibility of the medical records is likely to recur upon remand, we will address it. Duke contends

that the trial court erroneously admitted exhibits 1, 2, 3, 5, 6, and 9 over its objection because the medical opinions contained within the records were hearsay and did not satisfy the requirements of Indiana Rule of Evidence 702. The Schloots did not address this issue in their brief, but the trial court admitted these records under the business records exception of Indiana Rule of Evidence 803(6).

Evid. R. 803(6) provides that a memorandum, report, record or data compilation of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of regularly conducted business activity (unless a lack of trustworthiness is indicated) *are not excluded by the hearsay rule*. That is quite different from saying that such records are per se admissible.

The difference arises from the fact that such records must also be otherwise admissible. In other words, hospital records may not be excluded as hearsay simply because they include opinions or diagnoses. But, and it is a substantial but, for medical opinions and diagnoses to be admitted into evidence, they must meet the requirements for expert opinions set forth in Evid. R. 702. Furthermore, as the court explained in *Fendley v. Ford*, 458 N.E.2d 1167, 1171 n. 3 (Ind.Ct.App.1984) expressions of opinion within medical or hospital records historically have not been admissible under the business records exception because their accuracy cannot be evaluated without the safeguard of cross-examination of the person offering the opinion. While *Fendley* was decided before the adoption of our Rules of Evidence, we find that its reasoning remains sound and that it continues to apply under the Rules.

This case provides one good illustration of why this should be so. The medical records submitted contain multiple diagnoses, including degenerative disc disease. Competent medical opinion is necessary to enable the jury to determine which of Kathie's damages are causally related to her fall, and which are not. Even exhibit 1, which detailed her expenditures for drugs and other medical expenses, such as MRI's, cannot be properly evaluated without medical explanation that they were causally connected to the fall. Thus, while Kathie's testimony describing her fall and ensuing pain was sufficient to avoid judgment on the evidence and provide a basis for recovery of, at least, nominal damages, it was insufficient to link her fall with all the matters reflected in the exhibits. In order to do that she must present expert medical opinion establishing causation.

Finally, Duke argues that if we reverse the judgment on the evidence, then we should grant partial judgment on the evidence on some of the claims.[2] It does so without setting forth the specifics of those contentions in its argument. Nor does it provide citations to the record or a discussion of any authorities. We, therefore, find this argument waived for failure to comply with A.R. 8.3(A)(7).

The judgment on the evidence is reversed, and the case is remanded for a new trial.

DARDEN and ROBB, JJ., concur.

---

**2.** Its original motion to the trial court stated alternative claims. It does so without setting forth the specifics of those contentions in its argument.