**Kathryn SIKORA, Appellant–Defendant,**

v.

**Michael FROMM, Appellee–Plaintiff.**

No. 64A03–0202–CV–59.

Court of Appeals of Indiana.

Oct. 30, 2002.

Publication Ordered Jan. 8, 2003.

Transfer Denied Feb. 20, 2003.

Jack A. Kramer, Hoeppner Wagner & Evans, Merrillville, IN, Attorney for Appellant.

Benjamen W. Murphy, Walter J. Alvarez, Andrew Yoder, Crown Point, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Kathryn Sikora ("Sikora") was involved in a car accident with Appellee–Plaintiff Michael Fromm ("Fromm") on February 10, 1995. Following a two-day jury trial, held on November 13–14, 2001, a verdict was rendered in favor of Fromm in the amount of $275,000.00. The trial court subsequently denied Sikora's Motion to Correct errors on January 17, 2002 and Sikora filed her Notice of Appeal on February 14, 2002. We affirm.

### Issues

Sikora raises two issues on appeal, which we restate as follows:

I. Whether the trial court erroneously admitted the cost of certain medical expenses incurred by Fromm; and,

II. Whether the trial court erroneously instructed the jury on the issues of fault and the permanency of Fromm's injuries.

### Facts and Procedural History

On February 10, 1995, Fromm, and acquaintances Jim Knapp ("Knapp") and Pat McFadden ("McFadden"), drove from Fromm's home in Valparaiso, Indiana, to Harrah's Casino, in Joliet, Illinois. Fromm drove himself and his acquaintances in his mother's car ("the Fromm" vehicle). On the return trip to Fromm's home, Knapp drove the Fromm vehicle. As Knapp approached Fromm's trailer park, he slowed and turned on his left turn signal, bringing the Fromm vehicle to a complete stop. While waiting for a break in the oncoming traffic, Knapp suddenly told McFadden and Fromm to "hold on." (Tr. 59.) Sikora's vehicle then crashed into the backend of the Fromm vehicle sending it across the street and into the trailer park.

Fromm was taken by ambulance to Porter Memorial Hospital. X-rays on Fromm did not reveal any broken bones. Fromm was discharged that day. When Fromm awoke the next day he felt very stiff. Fromm contacted a chiropractor, Dr. Kostidis. After meeting with Dr. Kostidis, Dr. Kostidis recommended that Fromm undergo manipulations and physi-

cal therapy, which included electrical stimulation. In the year that followed, Fromm frequented Dr. Kostidis' office several times a week for treatments. An MRI on Fromm revealed a bulging disc. After eight months of treatment Dr. Kostidis determined that Fromm had reached maximum medical improvement, and Dr. Kostidis released Fromm from treatment. Dr. Kostidis opined that Fromm's bulging disc was the probable result of the car accident.

Q: Okay. Do you think that this accident caused [Fromm's] bulging disc?

A: I would relate there's a probability it's related to the accident, based on his history of telling me he had no symptoms prior, except for the four years before and that he was feeling good until this happened.

(Tr. 164.) Fromm last saw Dr. Kostidis on July 10, 1996.

Approximately one year later, on July 4, 1997, Fromm had another episode in which he was unable to get out of bed and experienced great pain in his neck. Fromm first attempted to make an appointment with Dr. Kostidis but because Dr. Kostidis was unable to see him right away he made an appointment with a different chiropractor, Dr. Staub. Within the next year, Fromm met with Dr. Staub on sixty-four occasions. Dr. Staub was of the opinion that Fromm suffered from a bulging disc and that his required treatments were the result of the February 10, 1995 car accident. When Dr. Staub released Fromm, he determined that he had an 8% impairment rating.

Fromm continued to suffer discomfort following his release from Dr. Staub and complained twice that his "neck locked" and that he could either not get out of bed or had trouble getting out of bed. (Tr. 81, 83–84.) Following one of these incidents, Fromm saw Dr. Adlaka, who ordered an

MRI and treated Fromm with what Fromm described as a "trigger point injection" to loosen the muscles in the area of Fromm's neck. (Tr. 86.)

At trial, Fromm testified regarding the accident as well as his injury, treatments, pain, and medical expenses. Dr. Kostidis and Dr. Straub also testified. Dr. Adlotka did not testify. Several of Fromm's medical expenses were admitted into evidence over Sikora's objection. At the close of the evidentiary proceedings, the trial court considered the parties' tendered instructions. The trial court refused the following proposed final instruction tendered by Sikora:

The plaintiff has a duty to exercise reasonable care to mitigate any damages he may have suffered in the accident. The failure to obey her [sic] physician's instructions which exacerbated or aggravated her [sic] injuries may constitute fault.

(App. 91.) Sikora's objection to the trial court's refusal to give this instruction was overruled. Additionally, Sikora objected to the inclusion of the term "permanent" in the following final instruction:

If you find from [a] preponderance of the evidence that the defendant is liable to the plaintiff, Michael Fromm, you then must determine the total amount of money that will fairly compensate him for those elements of damages that you find were proved by a preponderance of the evidence. In determining these damages, you may consider the following elements:

1. The nature and extent of the injuries;

2. Whether the injuries are temporary or permanent;

3. The physical pain and mental suffering experienced; and

4. The reasonable expenses for necessary medical care, treatment and services.

You are to determine the total amount of Plaintiff's damages without regard to which party was at fault in causing the damages claimed.

(App. 113.) Sikora's objection was overruled, and the instruction was submitted to the jury.

Sikora now appeals the jury's verdict of $275,000.00 in favor of Fromm.

## I. *Admission of Certain Medical Expenses*

Sikora claims that the trial court erroneously admitted medical expenses that were not supported by expert testimony. Sikora does not take issue with the reasonableness of the bills presented, but rather whether such bills were incurred as a result of the car accident.

### *Standard of Review*

■■■ A trial court has broad discretion in determining the propriety of admission of evidence. *Mullis v. Brennan*, 716 N.E.2d 58, 66 (Ind.Ct.App.1999). Reversal of the trial court's ruling is warranted only when the court has abused its discretion, and its action is clearly erroneous and against the facts and circumstances before it. *Id.* We will not reverse the trial court's admission of evidence absent a showing of prejudice. *Id.*

### *Rule of Law*

■■■ The admission of medical expenses into evidence is controlled by Indiana Rule of Evidence 413, which reads as follows:

Statements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements shall constitute prima

facie evidence that the charges are reasonable.

Here, however, Sikora does not challenge the reasonableness of the medical charges themselves, but rather their connection to the car accident.

In order to receive a damage award covering medical expenses incurred as the result of an injury, it must be proven at trial that these expenses were both reasonable and necessary. The reasonableness of expenses can be proven, in part, by a demonstration that the plaintiff paid the amounts incurred. This is premised upon the concept that one would not pay an unreasonable bill. The necessity of the expenses must be proven as well. This is generally accomplished by offering the testimony of medical experts.

*Smith v. Syd's, Inc.*, 598 N.E.2d 1065, 1066 (Ind.1992) (internal citations omitted). In this case, Fromm may recover the reasonable value of the medical services rendered to him, provided there was evidence that the services were made necessary *by his car accident on February 10, 1995.*

### *Analysis*

Sikora contends that Fromm failed to present evidence that reasonably connected the following medical expenses, which were included in Plaintiff's Exhibit No. 2, to his car accident injuries:

SPECIALS LIST

. . . .

| | |
|---|---|
| SUDHAKAR GARLAPATI, M.D. | . . . . |
| 04/03/95–10/13/95 SERVICES | $ 115.00 |

. . . .

| | |
|---|---|
| CHUNG KIEL KIM, M.D. | . . . . |
| 04/18/95–09/01/95 | $ 100.00 |

. . . .

DIAGNOSTIC SPECIALTIES . . . .

| | |
|---|---|
| 09/08/99 MRI | $1,100 |

....

| | |
|---|---|
| MUNSTER SAME DAY SURGERY 09/17/99 FACILITY FEE | .... $ 975.00 |
| ADVANCED PAIN & ANES. CONSUL. 09/02/99–09/16/99 | .... $ 324.00 |

(App. 22,) Also contained within Plaintiff's Exhibit Two and contested were the expenses stemming from two MRI's performed by Dr. Kim and the expenses associated with treatment by Dr. Adlaka. Sikora asserts that there was no competent medical evidence connecting these expenses to the accident, and without such evidence, the expenses were inadmissible. We agree. Sikora's reliance on such cases as *Daub v. Daub*, 629 N.E.2d 873 (Ind.Ct. App.1994) and *Schloot v. Guinevere Real Estate Corp.*, 697 N.E.2d 1273 (Ind.Ct. App.1998) to deny the admission of these expenses is unpersuasive.

In *Daub*, the trial court granted judgment on the evidence in a negligence case where the plaintiff slipped on snow and ice, in part because "the plaintiff [Mrs. Daub] had not shown her medical expenses to be causally related to the slip." *Daub*, 629 N.E.2d at 877. On appeal, we affirmed the trial court's judgment, relying in part on the following:

> When an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without expert medical testimony. Ordinarily, however, the question of the causal connection between a permanent condition, an injury and a pre-existing condition is a complicated medical question. When the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary.

*Id.* at 877–78. (Internal citations omitted). As such, we held that Mrs. Daub, who had a pre-existing back condition and was the sole witness to describe her slip, injuries, and treatment, was not able to give testimony of probative value on the issue of cause. However, we further noted that had Mrs. Daub's testimony been "coupled with a diagnosis of the nature of her ailment, and an application of scientific principles by one knowledgeable in the treatment of the ailment, [it] may [have been] sufficient to permit a jury to find for [Mrs. Daub] without resort to speculation." *Id.* at 878.

In *Schloot*, we reversed a trial court's grant of judgment on the evidence in a slip and fall negligence action. There, the plaintiff argued that her testimony and the medical records admitted at trial were sufficient evidence that her fall proximately caused her injuries and should prevent entry of a judgment on the evidence. *Schloot*, 697 N.E.2d at 1277. Because the plaintiff testified that she fell flat on her back, and was immediately in pain, which persisted after medical treatment, we found in part that the cause of injury was objective in nature. Therefore, expert medical testimony was not required to survive judgment on the evidence and recover nominal damages. *Id.* at 1276. However, we further held that:

> Competent medical opinion is necessary to enable the jury to determine which of [the plaintiff's] damages are causally related to her fall, and which are not. Even exhibit 1, which detailed her expenditures for drugs and other medical expenses, such as MRI's, cannot be properly evaluated without medical explanation that they were causally connected to the fall.

*Id.* at 1277. Thus, upon remand expert medical testimony would be required to establish causation. *Id.*

■ Here, unlike the *Daub* and *Schloot* cases, Plaintiff's Exhibit Two was admitted

following the medical explanations of two qualified experts, Dr. Staub and Dr. Kostidis. Both chiropractors were of the opinion that Fromm suffered from a bulging disc as the result of his February 10, 1995 car accident, and both described their treatments and costs—which represented the majority of expenses included in Plaintiff's Exhibit Two.[1] Yet, our review of the record supports Sikora's assertion that there was no expert testimony for those expenses she has delineated on appeal. Moreover, such medical treatments/expenses did not stem from "objective" injuries, as became evident from the technical descriptions given during the testimony of Drs. Kostidis and Staub. *See Daub,* 629 N.E.2d at 877. Therefore, the lay testimony elicited from Fromm was insufficient to connect his 1995 car accident to these treatments/expenses. Accordingly, it was error to admit Plaintiff's Exhibit No. 2 inclusive of these medical expenses.

■ Nevertheless, given that the jury's verdict simply awarded general damages in the amount of $275,000.00, it is not possible for this Court to decipher which, *if any,* of these damages were for those medical expenses that erroneously remained in Plaintiff's Exhibit 2. However, the verdict does indicate that the jury found Fromm, and Drs. Kostidis and Staub, to be credible witnesses. Moreover, several of the at-issue treatments/expenses appear, on their face, to be consistent with the injury described by Fromm, Dr. Kostidis, and Dr. Staub. As such, we are not inclined to remand for a new trial, nor invade the jury's verdict, when it appears that substantial justice was reached and that Sikora was not denied a fair trial. *Cf. Prewitt v. State,* 761 N.E.2d 862, 869 (Ind.Ct.App.2002) (holding in part that the

admission of evidence is within the sound discretion of the trial court, and the decision to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion *resulting in the denial of a fair trial.*)

## II. *Jury Instructions*

Sikora asserts two errors in the trial court's final instructions to the jury: 1) that the trial court erroneously refused Sikora's Final Instruction No. 5 regarding mitigation of damages; and, 2) that the trial court erroneously included the term "permanency" within its instruction on damages. We disagree.

### *Standard of Review and Rule of Law*

■ Instruction of the jury is left to the sound judgment of the trial court, and our review of a trial court's decisions in this regard is highly deferential: we will not disturb the court's judgment absent an abuse of discretion. *Smock Materials Handling Co. v. Kerr,* 719 N.E.2d 396, 402 (Ind.Ct.App.1999). A trial court should give a tendered instruction if the instruction correctly states the law, the evidence supports the instruction, and the substance of the charge is not covered by other instructions. *Id.* Jury instructions will be considered as a whole and not individually, and a court does not necessarily abuse its discretion by giving an erroneous instruction. *Id.* To find that the court abused its discretion by giving an erroneous instruction, we must find that the instructions taken as a whole misstate the law or otherwise mislead the jury. *Id.* Further, errors in instruction are harmless and do not require reversal where the verdict would have been no different had the jury been properly instructed. *Id.*

---

1. Plaintiff's Exhibit No. 2, entitled "TOTAL SPECIALS TO DATE[,]" listed medical expenses that amounted to $12,718.06. From this list, Sikora objected to treatments that amounted to $3889.00.

### A. Analysis—Mitigation of Damages Instruction

 Sikora tendered the following final jury instruction that was refused by the trial court:

> The plaintiff has a duty to exercise reasonable care to mitigate any damages he may have suffered in the accident. The failure to obey her [sic] physician's instructions which exacerbated or aggravated her [sic] injuries may constitute fault.

(App. 91.) This instruction correctly states the law. *See Nelson v. Marchand,* 691 N.E.2d 1264, 1271 (Ind.Ct.App.1998) (holding in part that a non-breaching party must mitigate damages and that the principle of mitigation of damages includes conduct by the injured party that aggravates or increases the party's injuries.) However, the instruction is not supported by the evidence.

The only testimony referenced by Sikora in support of giving the above instruction came from Dr. Kostidis, who testified in part as follows:

> Q: Okay. [Dr. Kostidis] [y]ou would agree that it's important for patients to follow up with the treatment that you or [one of the other chiropractors you work with] order, correct?
>
> A: Yes.
>
> . . . .
>
> Q: Okay. Towards the end of the treatment with ... Mr. Fromm, there were several reschedules or no shows, correct?
>
> A: Yes.
>
> . . . .
>
> Q: Okay ... [Fromm] was seen in your office whether it be you, [or one of the other chiropractors in your clinic], about every two or three days, is that correct?
>
> A: Yes.

> Q: Okay. And that continued for quite some time.
>
> A: Yes.
>
> Q: Okay. Let me make sure I get my dates right here ... Between March 1 of '95 and March 13 of 1995, ..., you didn't see or the clinic didn't see Mr. Fromm, ... did they?
>
> A: No.

(App. 209–11.) This testimony alone does not support the inference that Fromm's actions, or inactions, *aggravated or increased* his injuries. Accordingly, the trial court did not abuse its discretion in refusing the instruction.

### B. Analysis—Inclusion of "Permanent" in Damages Instruction

 The jury was given, in part, the following final instructions:

> If you find from [a] preponderance of the evidence that the defendant is liable to the plaintiff, Michael Fromm, you then must determine the total amount of money that will fairly compensate him for those elements of damages that you find were proved by a preponderance of the evidence. In determining these damages, you may consider the following elements:
>
> 1. The nature and extent of the injuries;
>
> 2. Whether the injuries are temporary or permanent;
>
> 3. The physical pain and mental suffering experienced; and
>
> 4. The reasonable expenses for necessary medical care, treatment and services.
>
> You are to determine the total amount of plaintiff's damages without regard to which party was at fault in causing the damages claimed.

Sikora contends the term "permanent" was not supported by the evidence. We disagree.

Both Drs. Kostidis and Staub testified that Fromm suffered from a bulging disc caused by the February 10, 1995 car accident. Dr. Kostidis further testified that Fromm was susceptible to future injury because despite chiropractic treatments the bulging disc remained. Dr. Staub reiterated such testimony, and also assigned Fromm an impairment rating of 8%. This testimony supports the inclusion of the term, "permanent" in the trial court's final instructions to the jury.

Affirmed.

SULLIVAN and MATHIAS, JJ., concur.

### ORDER

This Court having heretofore handed down its opinion in this appeal on October 30, 2002, marked Memorandum Decision, Not for Publication.

Comes now the Appellant, by counsel, and files herein Motion to Publish Decision, alleging therein that this Court's decision establishes and clarifies that Evidence Rule 413 does not render every medical expense tendered admissible, regardless of the evidence presented in this case and prays this Court to publish its Memorandum Decision in this case inasmuch as the decision involves a legal issue of substantial importance, particularly to litigants in injury cases and attorneys who try those cases.

The Court having examined said Motion, having reviewed its opinion in this case and being duly advised, now finds that the Appellant's said Motion to Publish Decision should be granted.

IT IS THEREFORE ORDERED that the Appellant's Motion to Publish Opinion is granted and this Court's opinion heretofore handed down in this cause on October 30, 2002, marked Memorandum Decision, Not for Publication is now ordered published.