## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 27 2020, 9:29 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bradley Keffer
Austin Andreas
Keffer Hirschauer LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dakota J. Horn,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

July 27, 2020

Court of Appeals Case No.
19A-CR-2575

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1801-F2-3

**Bradford, Chief Judge.**

# Case Summary

In May of 2019, Dakota Horn was convicted of Level 2 felony robbery resulting in serious bodily injury, Level 3 felony robbery, Level 3 felony criminal confinement, Level 3 felony aggravated battery, Level 6 felony conspiracy to commit fraud, and Class A misdemeanor theft, and ultimately sentenced to thirty-one years with five years suspended to probation. Horn contends that the trial court (1) committed fundamental error in admitting the victim's recorded statements to police pursuant to Indiana Evidence Rule 803(5), (2) erroneously redacted portions of the victim's medical records admitted into evidence, and (3) erroneously found and/or weighed certain aggravating and mitigating factors. Because we disagree, we affirm.

# Facts and Procedural History

Between November 24 and 26, 2017, Michial Pardue hired Horn to perform work in the basement of his Tippecanoe County residence. On November 26, 2017, while in the basement, Horn struck Pardue on the right side of his head, near the temple, with a ball-peen hammer. After Pardue fell to the floor, Horn demanded Pardue's wallet and mobile telephone, took cash from inside the wallet, and tied Pardue's hands behind his back with an extension cord. Horn gave his wife Nicole, who had been waiting in a vehicle in Pardue's driveway, Pardue's debit card and told her to make a cash withdrawal. Horn threatened to

hit Pardue again in order to obtain his personal identification number ("PIN"). Once Horn obtained the PIN, Nicole drove to a Family Express gas station and withdrew a total of $400.00 from an ATM machine using Pardue's debit card. Following the withdrawal, Nicole retrieved Horn from Pardue's residence, and they left. Horn and Nicole would unsuccessfully attempt to withdraw money again using Pardue's debit card, once at an ATM at the Tippecanoe Mall and twice in Kokomo.

[3] Some time later, Pardue used a neighbor's telephone to call 911 and his bank to cancel his debit card. Tippecanoe County Sheriff's Deputy Jordan Jones arrived at Pardue's residence, and Pardue reported the incident to Deputy Jones and showed him where it had occurred. Upon observing Pardue's head wound, Deputy Jones called for medical personnel, who transported Pardue to the hospital. Once at the hospital, it was determined that Pardue had sustained a depressed fracture to his skull, which required surgery to repair. While at the hospital, Pardue spoke to police two different times, both of which conversations were recorded.

[4] During the course of their investigation, law enforcement interviewed Pardue twice. Law enforcement also interviewed Nicole and Horn. On November 27, 2017, law enforcement interviewed Nicole, and she claimed that Pardue and Horn had had an altercation after Pardue made sexual advances towards Horn. Nicole also stated that Pardue authorized the $400.00 withdrawal to pay Horn for his work. On November 29, 2017, during an interview with Detective Ben Beutler, Horn claimed that Pardue "bear hugged" him, which resulted in both

of them falling back into a wall and then onto the ground where Pardue hit the back of his head on some lumber. Tr. Vol. III pp. 166–67.[1] Horn also claimed that Pardue owed him $900.00 for his labor and that he permitted Nicole to withdraw $400.00. Horn admitted that he took Pardue's debit card and mobile telephone, subsequently throwing the mobile telephone along the roadside and having Nicole throw the debit card in someone's yard.

[5] On January 26, 2018, the State charged Horn with Level 2 felony robbery resulting in serious bodily injury, Level 2 felony conspiracy to commit robbery resulting in serious bodily injury, Level 3 felony robbery, Level 3 felony conspiracy to commit robbery, Level 3 felony criminal confinement, Level 3 felony conspiracy to commit criminal confinement, Level 6 felony conspiracy to commit fraud, Level 6 felony theft, and Class A misdemeanor theft. The State subsequently added a charge of Level 3 felony aggravated battery. On May 1, 2019, because of Pardue's inability to remember the incident or days following it due to his head injury, the State moved to have his recorded statements to police admitted at trial pursuant to Indiana Evidence Rule 803(5). Prior to trial, a hearing was held regarding the State's motion, at which the State informed the court that since the incident Pardue "had some pretty severe memory problems and even watching these videos he doesn't even remember talking to the police about it." Tr. Vol. II p. 39. Following Pardue's testimony

---

[1] "Tr." will refer to the transcript prepared for Nicole's appeal which was transferred to this appeal. Nicole and Horn were tried together. "D.H. Tr." will refer to the sentencing transcript prepared for Horn's appeal.

that trial court ruled in limine to admit Pardue's recorded statements at trial, to which Horn did not object, stating, "[Horn] doesn't have any objection to the playing of the tapes or the discs that you have in front of you as long as [Pardue] testifies. At this point." Tr. Vol. II p. 50.

[6] On May 28 through 31, 2019, a jury trial was held, at which Pardue's prior-recorded statements to police were played for the jury and admitted into evidence, without objection.[2] During cross-examination, Horn questioned Pardue regarding his memory loss as follows:

> [Defense Counsel:] There's nothing, not one thing that you can remember after you're claiming getting hit with the hammer, you're saying there is nothing about this entire incident that you remember.
>
> [Pardue:] Yes sir.
>
> [Defense Counsel:] Zero?
>
> [Pardue:] Zero.

Tr. Vol. III p. 17. Horn also sought to admit Pardue's medical records from the Veteran's Administration ("VA"), which the trial court admitted after redacting certain portions it determined to be expert opinion. Following the trial, Horn was found guilty of Level 2 felony robbery resulting in serious bodily injury, Level 3 felony robbery, Level 3 felony criminal confinement, Level 3 felony

---

[2] The recorded statements consisted of police body-cam video at the scene, two interviews at the hospital, and interviews on November 27 and 30, 2017.

aggravated battery, Level 6 felony conspiracy to commit fraud, and Class A misdemeanor theft. On October 10, 2019, the trial court sentenced Horn to nineteen years for his Level 2 felony robbery resulting in serious bodily injury conviction, ten years for his Level 3 felony criminal confinement conviction, and two years for his Level 6 felony conspiracy to commit fraud conviction. The trial court ordered Horn's sentences to be served consecutively, for an aggregate sentence of thirty-one years with five years suspended to probation. The trial court also merged Horn's remaining convictions with his Level 2 felony robbery conviction.

# Discussion and Decision

## I. Pardue's Recorded Statements

[7]     Because Pardue testified that he did not remember the interviews with law enforcement, Horn contends that the trial court erroneously admitted his recorded statements at trial pursuant to Indiana Evidence Rule 803(5). Indiana Evidence Rule 803(5) provides the following exception to the hearsay rule:

> (5) Recorded Recollection. A record that:
>
> (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;
>
> (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and
>
> (C) accurately reflects the witness's knowledge.

> If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party.

The State argues that because Pardue testified at the pretrial hearing that each of the recorded statements correctly reflected his prior knowledge of the events, he properly vouched for the veracity of these statements as required under Indiana Evidence Rule 803(5). In *Ballard v. State*, we noted that

> [b]efore a statement can be admitted under the recorded recollection hearsay exception, certain foundational requirements must be met, including some acknowledgment that the statement was accurate when it was made. *Williams v. State*, 698 N.E.2d 848, 850 n.4 (Ind. Ct. App. 1998), *trans. denied*. A trial court should not admit a witness's statement into evidence when the witness cannot vouch for the accuracy of the statement nor remember having made the statement. *See Kubsch v. State*, 866 N.E.2d 726, 735 (Ind. 2007) (trial court correctly denied introduction of witness statement when witness could not vouch for statement she could not even remember making).

877 N.E.2d 860, 862 (Ind. Ct. App. 2007).

[8] The State's argument, however, ignores the fact that Pardue has no recollection of making these statements to police. At the pretrial hearing, the State informed the trial court that "even watching these videos [Pardue] doesn't even remember talking to the police about it." Tr. Vol. II p. 39. Pardue also testified that "I don't remember any thing [sic] on these tapes. I just recall talking about, talking about the events that happened to people, like my daughter and family members." Tr. Vol. II p. 48. It runs contrary to logic that a person could vouch

for the accuracy of his prior statements to police when he has no recollection of making them. Therefore, Pardue's statements were not admissible pursuant to Indiana Evidence Rule 803(5).

[9] Although we conclude that Pardue's recorded statements were inadmissible pursuant to Indiana Evidence Rule 803(5), Horn failed to object to the admission of the statements at trial; therefore, his contention is limited only to review for fundamental error.

> The fundamental error exception permits an appellate court to review a claim that has been waived by a defendant's failure to raise a contemporaneous objection. Fundamental error is defined as an error so prejudicial to the rights of a defendant that a fair trial is rendered impossible. The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.

*Benefield v. State*, 945 N.E.2d 791, 801 (Ind. Ct. App. 2011).

[10] We conclude that the error was not so fundamental that it rendered a fair trial impossible. While Pardue's recorded statements provide more detail regarding the attack, they are merely consistent with myriad other evidence that was available to the factfinder tending to show Horn's guilt. First, Pardue testified, based on his own memory, to the circumstances leading up to the attack. Pardue recalled Horn working the two days prior to the attack, paying him $200.00 each day for the work, and Horn being physically present at the residence at the time of the attack. Moreover, there is no dispute that Pardue

suffered a significant skull fracture, and Dr. Mark Estes testified that the type of wound Pardue sustained would be consistent with having come from a hammer. The Indiana University Health records stated that Pardue was brought to the emergency room "after having been struck in the head with a ball-peen hammer. The patient reportedly had hired someone to help him with some work around the house. He was struck in head with a hammer and was robbed." Ex. p. 88.

While Horn claimed that Pardue was injured during a fall that occurred after Pardue tried to sexually assault him, the jury was not required to believe Horn's version of the events and did not. Further, Horn admitted to taking Pardue's debit card and mobile telephone. Pardue's wallet, minus the debit card and cash, and mobile telephone were both ultimately recovered along the roadside. Last, the jury saw bank records and screenshot images of surveillance video tending to establish that Nicole successfully withdrew $400.00 from an ATM and unsuccessfully attempted to withdraw $200.00 at an ATM at Tippecanoe Mall and $400.00 and $200.00 in Kokomo, all with Pardue's debit card. Because the jury heard and saw more than enough evidence to sustain Horn's convictions beyond Pardue's statements to police, Horn has failed to establish that fundamental error occurred.[3]

---

[3] Because we conclude that there was no fundamental error, we need not address Horn's contention that the recorded statements should have only been read into the record and not played for the jury pursuant to Indiana Evidence Rule 803(5).

# II. Redacted VA Records

[12] Horn contends that the trial court erred by redacting portions of Pardue's VA medical records. "We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Baker v. State*, 997 N.E.2d 67, 70 (Ind. Ct. App. 2013). "An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *Id*. Specifically, Horn claims that the trial court improperly redacted page seventy-two of the VA medical records as follows:

> IMPRESSIONS & RECOMMENDATIONS:
>
> The patient complained about and demonstrated memory problems before sustaining a head injury on 11/26/17. On 12/1/17, he reported no retrograde amnesia. Now, he reports an unusually long period retrograde amnesia and significantly shorter period of anterograde amnesia. *The inconsistency in his report and a relatively longer retrograde vs. anterograde amnesia are both unusual symptoms after the severity of trauma experienced.*
>
> His low scores on PVTS were *suggestive of inadequate effort, i.e.,* at a level at which accurate assessment of his ability could not be obtained. *If the scores on the PVTs were reflective of his true ability, he would likely have much more significant difficulty with daily functioning than is reported.*
>
> *His scores on a personality inventory were suggestive of significant under-reporting of psychological and behavioral issues, i.e., issues that are typically acknowledged by people both with and without psychiatric conditions.*
>
> Without valid testing results, no diagnosis or recommendations can be offered. *Taken together, these results raise the question about*

*whether the patient is trying to appear as if cognitive problems exist and psychiatric symptoms do not exist.*

State's Ex. 15R, Def. Ex. E. (italicized words redacted at trial).

[13] In *Schloot v. Guinevere Real Estate Corp.,* 697 N.E.2d 1273, 1277 (Ind. Ct. App. 1998), we addressed the admissibility of medical records pursuant to Indiana Evidence Rule 803(6), concluding as follows:

> [H]ospital records may not be excluded as hearsay simply because they include opinions or diagnoses. But, and it is a substantial but, for medical opinions and diagnoses to be admitted into evidence, they must meet the requirements for expert opinions set forth in Evid. R. 702.

Indiana Evidence Rule 702 requires the following:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.
>
> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

For a witness to be qualified as an expert, two requirements must be met. *Schaefer v. State*, 750 N.E.2d 787, 793 (Ind. Ct. App. 2001). "First, the subject matter must be distinctly related to some scientific field, business, or profession beyond the knowledge of the average person." *Id*. "Second, the witness must

have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact." *Id.*

> Once the foundational requirements have been satisfied and the opinion elicited, the expert witness is subject to the hallmark of our adversarial system—cross-examination. The strengths and weaknesses of the expert's opinion may be questioned against the facts, its conclusiveness or lack thereof may be explored, and any lack of certitude may be fully revealed to the finder of fact. The finder of fact is entitled to weigh and determine the credibility to be accorded the expert's opinion based on the evidence presented, including the extent of the witness's experience and expertise, the reliability of the analytical methods employed, and the degree of certitude with which the opinion is cast.

*Id.* at 794–95 (cleaned up). *See also Schloot*, 697 N.E.2d at 1277 (noting that "expressions of opinion within medical or hospital records historically have not been admissible under the business records exception because their accuracy cannot be evaluated without the safeguard of cross-examination of the person offering the opinion.").

[14] Because Dr. Jay Summers did not testify at trial, we conclude that the trial court was well within its discretion to redact his opinions regarding Pardue's health in Pardue's VA medical records. Without Dr. Summers testifying, the proper foundation for expert opinion evidence contained in medical records was not laid, *i.e.*, area of practice, years of practice, credentials, etc. Moreover, had Dr. Summers's opinions remained unredacted, it would have deprived the

State the opportunity to cross-examine him regarding his opinions or to determine the trustworthiness of his opinions.

[15] Horn directs our attention to *Chambers v. Mississippi*, 410 U.S. 284 (1973), to argue that the Indiana Rules of Evidence were "mechanistically" applied in this case, effectively denying him due process. *Chambers*, however, is distinguishable and does not take Horn where he needs to go. In *Chambers*, the Supreme Court held that "the exclusion of third-party confessions may constitute a reversible due process violation if the hearsay statements are characterized by 'persuasive assurances of trustworthiness.'" *Saintignon v. State*, 118 N.E.3d 778, 787 (Ind. Ct. App. 2019) (quoting *Chambers*, 410 U.S. at 300–02). While the Court concluded that the trial court's decision to deny the admission of third-party confessions based on state evidentiary rules denied Chambers a fair trial, it made clear that its decision was narrowly confined to that particular case, noting, "Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." *Chambers*, 480 U.S. at 302–03. The present matter involves expert opinion evidence rather than third-party confessions. Moreover, Horn fails to support his argument with any Indiana precedent applying the *Chambers* decision in cases where expert opinion evidence is at issue, and our research reveals none. Horn has failed to establish that the trial court erred in this regard.

# III. Aggravating and Mitigating Factors

[16] So long as the sentence imposed by the trial court is within the statutory range, we review it only for an abuse of discretion. *Reyes v. State*, 909 N.E.2d 1124, 1127 (Ind. Ct. App. 2009). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. A trial court may abuse its discretion by (1) failing to enter a sentencing statement; (2) entering a sentencing statement that explains reasons for imposing a sentence, including mitigating and aggravating factors, which are not supported by the record; or (3) citing reasons that are contrary to law. *Id*.

## A. Position of Trust

[17] Because Horn and Pardue had only a casual business relationship, Horn contends that the trial court erred by finding a position of trust as an aggravating factor. Even assuming that the trial court erred in this regard, we need not remand for resentencing because we are confident that the trial court would have imposed the same slightly-enhanced sentence given the other aggravating factors it found at sentencing, *i.e.*, criminal history and the harm and injury inflicted on the victim were greater than required to satisfy the statutory elements of the crimes, which Horn does not challenge. *See Kayser v. State*, 131 N.E.3d 717, 723 (Ind. Ct. App. 2019) (finding that even without considering an aggravating factor, it is unnecessary to remand for resentencing because we are confident that the trial court would have imposed the same

sentence given defendant's criminal history, which was unchallenged), *see also* *Gleason v. State*, 965 N.E.2d 702, 712 (Ind. Ct. App. 2012) ("One valid aggravator alone is enough to enhance a sentence or to impose it consecutive to another.").[4]

## B. Restitution

[18] Horn contends that because the trial court found his willingness to pay restitution as a mitigating factor after imposing his sentence, it erred by failing to resentence him. At the sentencing hearing, following the imposition of Horn's sentence, the trial court stated, "I think I need to add as a mitigator that there has been a willingness shown to pay the restitution in this cause, my apologies I should have brought that up earlier," but chose not to change Horn's sentence. D.H. Tr. Vol. II p. 53. Although the trial court did find that Horn's willingness to pay restitution was a mitigating factor, it appears by its decision not to change Horn's sentence that the trial court afforded this mitigating factor little to no weight, which it was entitled to do. *See Singer v. State*, 674 N.E.2d 11, 17–18 (Ind. Ct. App. 1996) ("It is well settled, however, that a sentencing court is not required to find the existence of mitigating circumstances nor to give mitigating circumstances the same weight as the

---

[4] The advisory sentence for a Level 2, Level 3, and Level 6 felony convictions is seventeen and one-half years, nine years, and one year, respectively. Ind. Code § 35-50-2-4.5, 5, 7. Horn's sentence was only slightly enhanced above the advisory.

defendant gives them."). Horn has failed to establish that the trial court abused its discretion in this regard.

[19] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.